**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | **Criminal Case Number CR-09-158 (ESH)** |
| : | |
| **ANDREW WARREN,** : | |
| : | |
| **Defendant** : | |
| : | |

**DEFENDANT ANDREW WARREN'S MOTION TO SUPPRESS TANGIBLE EVIDENCE AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES AND REQUEST FOR EVIDENTIARY HEARING**

COMES NOW defendant Andrew Warren ("Mr. Warren"), by and through his undersigned counsel and pursuant to Fed. R. Crim. P. 12(b)(3), and respectfully files this Motion to Suppress Tangible Evidence ("Motion to Suppress") and Incorporated Memorandum of Points and Authorities and Request for Evidentiary Hearing. In furtherance of his Motion to Suppress, Mr. Warren respectfully states as follows:

**I.   BACKGROUND**

Mr. Warren has been charged via indictment with one count of Sexual Abuse in the Special Maritime and Territorial Jurisdiction of the United States, in violation of 18 U.S.C. §§ 2242(2) and 7(9). Prior to the indictment and while investigating this matter, Scott Banker ("Banker"), a Special Agent with the United States Department of State, Diplomatic Security Service ("DSS"), submitted an Application and Affidavit for Search Warrant (attached hereto as "Exhibit A") to the Honorable Royce Lambert on approximately October 9, 2008, seeking authorization to search Mr. Warren's residence at #5 Chamin D'Hydra, Poirsson, El

Biar, in Algiers, Algeria, for evidence concerning a violation of 18 U.S.C. 2241 and 18 U.S.C. 2242.  Relying upon Banker's Affidavit for Search Warrant ("Banker's Affidavit"), Judge Lambert granted that search warrant (the "Search Warrant") that same day, and Banker executed the Search Warrant on approximately October 14, 2008, and seized numerous items.  For the reasons stated herein, Mr. Warren respectfully submits that this Court should suppress all items seized during the Search Warrant's execution because the magistrate did not have a substantial basis for finding probable cause.

**II.     BANKER'S AFFIDAVIT**

Banker's Affidavit begins its Summary of the Facts by describing a story that alleged Victim #1 ("Alleged V1") told another DSS Special Agent, Jared Campbell ("Agent Campbell") during an interview in Germany.  Banker Affidavit ("Banker Aff.") at ¶ 17.  In that interview, Alleged V1 stated that "sometime between the months of August and September 2007," she attended a party at Mr. Warren's residence, Mr. Warren prepared several drinks for her outside of her sight, and that "she began to feel the effects of the alcohol" as the evening progressed.  Banker Aff. at ¶ 17.  Later, "she suddenly felt nauseated and felt an immediate need to vomit," "but described the sudden violent onset of nausea as nothing like the physiological effects of alcohol that she had experienced while consuming alcohol on previous occasions."  Banker Aff. at ¶ 18.  While vomiting, Alleged V1 remembered Mr. Warren saying that she could spend the night at his house, but did not remember anything that happened for the rest of the evening afterwards.  Banker Aff. at ¶ 19.  More importantly, although she woke up with a "slight headache and felt physical discomfort in her vaginal area," Alleged V1 had no memory of "what had occurred after she

had gotten sick in [Mr.] Warren's bathroom," and "**had no memory of having intercourse**." Banker Aff. at ¶ 20.  She indicated that, after she observed a used condom on the floor near a yellow container next to the bed, she called alleged Witness #1 ("Alleged W1") on her mobile phone, asked Alleged W1 to come to the bedroom, and showed Alleged W1 the condom.  Banker Aff. at ¶ 21.  Alleged V1 and Alleged W1 then quickly left the bedroom, and Alleged V1 has neither seen nor had contact with Mr. Warren since then.  *Id.*

Banker's Affidavit continues with a story alleged Victim #2 ("Alleged V2") told yet another DSS Special Agent, Gregory Schossler ("Agent Schossler"), during an interview in Spain.  In that interview, Alleged V2 stated that Alleged V2 visited Mr. Warren's residence on February 17, 2008.  Banker Aff. at ¶ 25.  After giving Alleged V2 a tour of his home, and taking a digital photograph of her on his cellular phone while she sat on Mr. Warren's couch, Mr. Warren eventually prepared two apple martinis for Alleged V2.  Banker Aff. at ¶¶ 25-26.  While drinking the second apple martini, Alleged V2 suddenly felt ill, and the illness was "nothing like the physiological effects of alcohol that she had experienced when she consumed alcohol on previous occasions."  Banker Aff. at ¶ 27.  Alleged V2 remembers being on Mr. Warren's bathroom floor, and telling him to "leave the bathroom."  Banker Aff. at ¶ 28.  She was passing "in and out of consciousness," but later remembered that Mr. Warren removed her blue jeans, boots, and blazer.  *Id.*  Although she told Mr. Warren to "stop" undressing her while she was in Mr. Warren's bed, she acknowledges that she later "asked Warren to **use a condom**" before they engaged in sexual intercourse.  Banker Aff. at ¶¶ 29-30. (emphasis added).  In spite of being alert enough to request that Mr. Warren "use a condom," Alleged V2 later "woke up in [Mr.] Warren's bed, but did not understand what had happened to her."  Banker Aff. at ¶ 31.

3

Banker's Affidavit next discusses Banker's discussion on October 7, 2008, with a "toxicology expert" who explained that "the victims' symptoms were consistent with drugs used to facilitate sexual assaults." Banker Aff. at ¶ 33. The toxicology expert further explained what drugs are commonly used to facilitate sexual assault, as well as the common effects of those drugs. Banker Aff. at ¶¶ 33-34. Finally, the toxicology expert advised Banker that those drugs are "commonly sold over the Internet[,]" and that "information on how to obtain and use [those] substances to facilitate sexual assaults can be found on the Internet." Banker Aff. at ¶ 35.

Banker's Affidavit continues with the assertion that, "[i]n light of (1) V2's statement that Warren took a photograph of her on the night of her alleged assault, (2) the toxicologist[']s opinion that information concerning how to obtain and use chemical substances to facilitate sexual assaults may be found on the Internet, and (3) the toxicologist's opinion that these chemical substances are sold over the Internet, I have probable cause to believe that evidence of [Mr.] Warren's sexual assaults may be stored on related media in his residence." Banker's Affidavit concludes with a list of "Items to be Seized" during the execution of the Search Warrant. *See* Banker Aff., Attachment B.

### III.  ANALYSIS

#### A.  The Fourth Amendment and Exclusionary Rule

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

4

U.S. Const. amend. IV.  The "probable cause" requirement is basic to the central concern of the Fourth Amendment that citizens be protected from arbitrary and oppressive interference and intrusions by the agents of the government.  *Berger v. New York*, 388 U.S. 41, 53 (1967) (*quoting Camara v. Municipal Court of San Francisco*, 387 U.S. 523 (1967). Indeed, one of the purposes of the Fourth Amendment was to guarantee that necessary police intrusions were justified by reason, and not on mere suspicion or whim.  *Berger v. New York*, 388 U.S. at 53; *Camera v. Municipal Court of San Francisco*, 387 U.S. at 528.  As such, the "probable cause" requirement serves to eliminate intrusions at the "discretion of the officer in the field."  *Delaware v. Prouse*, 440 U.S. 648, 655 (1979).

"To demonstrate probable cause to search premises, an affidavit [supporting a search warrant] must set forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime."  *United States v. Laws*, 808 F.2d 92, 94 (D.C. Cir. 1986).  An issuing magistrate's determination of probable cause must be upheld only if, looking at the totality of the circumstances, "the magistrate had a 'substantial basis for . . . concluding that probable cause existed.'"  *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (*quoting Jones v. United States*, 362 U.S. 257, 271 (1960)).

"The exclusionary rule bars the prosecution from using in its case-in-chief evidence obtained during a search that violated the Fourth Amendment."  *United States v. Johnson,* 332 F. Supp. 2d 35, 38 (D.D.C. 2004) (internal citations omitted).  For the reasons stated herein, the exclusionary rule should bar the government from using any of the items seized pursuant to the Search Warrant.  First, Alleged V2's statement that Mr. Warren took a photograph of her with his cellular phone on the night of her alleged assault, while she was seated on his couch and well before she and Mr. Warren even began drinking the apple

5

martinis, would have in no way induced a reasonably prudent person to believe that a search of Mr. Warren's residence would uncover evidence of a crime. Banker set forth no information in Banker's Affidavit that would indicate that Mr. Warren took photos of any of his alleged misconduct. In fact, Mr. Warren's sole photograph of Alleged V2 from his camera phone is the only mention of photography by Mr. Warren in the entirety of Banker's Affidavit. Accordingly, no reasonably prudent person could have concluded that a search of Mr. Warren's photographs located anywhere – either on his cellular phone or in his residence – would uncover evidence of a crime.

Next, neither the toxicologist's opinion that information concerning how to obtain and use chemical substances to facilitate sexual assaults may generally be found on the Internet, nor her opinion that these chemical substances are generally sold over the Internet, provide even a stitch of probable cause that a search of Mr. Warren's residence would have uncovered evidence of a crime. In Banker's Affidavit, neither alleged victim (Alleged V1 or Alleged V2) nor neither alleged witness (Alleged W1 or Alleged W2) ever indicated that they observed any drug intoxicant or similar substance anywhere in Mr. Warren's residence. In fact, at the time of the search warrant, no one had ever seen Mr. Warren with a drug intoxicant or similar substance either on his person or in his residence. Even more striking, any indication that Mr. Warren was even <u>aware</u> that information concerning how to obtain and use the above-referenced chemical substances was available on the Internet was noticeably absent from Banker's Affidavit.

The <u>only</u> similarity between Alleged V1 and Alleged V2 – that their sicknesses were "nothing like" the usual physiological effects of alcohol to which they were accustomed – falls egregiously short of establishing probable cause that Mr. Warren's residence would

6

contain a drug intoxicant or similar substance on October 9, 2008, the date the Honorable Royce C. Lamberth executed the warrant authorizing the search of Mr. Warren's residence. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983) (Court must find that a "substantial basis for determining the existence of probable cause" was present at the time the warrant was issued). Mr. Warren respectfully questions how information generally available on the Internet regarding (1) the availability of chemical substances or (2) information regarding how to use those chemical substances in an illegal way would shed any light on whether a reasonably prudent person would believe that a search of Mr. Warren's residence would uncover evidence of a crime.

For those reasons, any reasonable review of Banker's Affidavit clearly illustrates that the magistrate did not have a substantial basis for finding probable cause.  As such, the warrant in this matter did not issue upon probable cause and all items seized pursuant to Banker's Affidavit should be suppressed.

    B.  ***Leon's*** **"Good Faith" Exception Inapplicable in This Matter**

"Under the "good faith" exception to the exclusionary rule, evidence need not be suppressed when law enforcement obtain the evidence through objective good faith reliance on a facially valid warrant that later is found to lack probable cause." *United States v. Johnson,* 332 F. Supp. 2d at 38 (*citing United States v. Leon*, 468 U.S. 897, 920 (1984)).  In *Leon*, the Supreme Court held that the good faith exception to the exclusionary rule was appropriate, but noted an exception to the good faith exception where a warrant is based upon an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  468 U.S. at 919, 923.  If "a reasonably well-trained officer would have known that the search was illegal," then the officer cannot rely upon *Leon*'s

7

good faith exception, and the exclusionary rule bars the prosecution from introducing the illegally-seized items. *Herring v. United States*, 129 S. Ct. 695, 703 (2009) (*citing Leon*, 468 U.S. at 922, n.23).

The first problem that should have alerted Banker that probable cause did not exist is that Banker's Affidavit included a discussion of only one photograph that Mr. Warren took of Alleged V2 with his cellular phone, and that photograph was not evidence of any alleged criminality. The second problem that should have alerted Banker that probable cause did not exist is that Banker's Affidavit is totally silent regarding information indicating Mr. Warren's knowledge that information concerning how to obtain and use the above-referenced chemical substances was available on the Internet. The third problem that should have alerted Banker that probable cause did not exist is that none of the alleged victims or witnesses ever reported observing Mr. Warren in possession of any drug intoxicant, including any of the above-referenced chemical substances. Essentially, no amount of deference to the magistrate's determination or Banker's Affidavit can overcome the <u>complete</u> lack of evidence that Mr. Warren has ever possessed a drug intoxicant or similar substance, and Banker's attempted reliance upon the toxicologist's assertion that information concerning how to obtain and use the above-referenced chemical substances is <u>generally</u> available on the Internet only serves to further solidify the grossly deficient nature of Banker's Affidavit.

Moreover, a court reviewing the issue of whether an affiant is entitled to rely upon the good faith exception to the exclusionary rule can take into account the affiant's knowledge and experience when determining whether an officer would know if a search was illegal despite the magistrate's authorization. *Herring v. United States*, 129 S. Ct. at 703

(applying an "objective" test that takes into account an officer's knowledge and experience).  In this case, Banker has a Juris Doctor degree from the University of Kansas, and was a criminal prosecutor for four years prior to joining the Diplomatic Security Service.  Banker Aff. at ¶ 1.  Banker has also received training in conducting criminal investigations from the Federal Law Enforcement Training Center and specialized training regarding sexual assault investigations from the Navy Criminal Investigative Service.  *Id*.  Accordingly, under the Supreme Court's "objective" test that takes into account an officer's knowledge and experience, the fact that Banker is an attorney and former prosecutor who has received specialized training in conducting the type of investigation he conducted in this matter also weighs toward the conclusion that he should have known the search was illegal despite the magistrate's authorization.

In conclusion, the information included in Banker's Affidavit thoroughly failed to set forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime and, as such, lacked indicia of probable cause as to render Banker's belief in its existence entirely unreasonable.  Therefore, the "good faith" exception to the exclusionary rule does not apply and the government should not be allowed to introduce items seized pursuant to the Search Warrant in its case-in-chief.

WHEREFORE, Defendant Andrew Warren respectfully requests that this Court enter an Order suppressing all items seized during the execution of the search warrant authorizing the search of Mr. Warren's residence at #5 Chamin D'Hydra, Poirsson, El Biar, in Algiers, Algeria, and further requests that this Court mandate an evidentiary hearing on this matter.

Dated: October 9, 2009
      Coral Gables, Florida

          Respectfully submitted,

          /s/ Mark David Hunter
          Mark David Hunter, Esquire
          DC Bar No. 974569
          Leser Hunter Taubman & Taubman, PLLC
          255 University Drive
          Coral Gables, Florida 33134
          Tel:  (305) 629-8816
          Fax: (305) 629-8877
          E-Mail: mdhunter@lhttlaw.com

          /s/ Christopher Bruno
          Christopher Bruno, Esquire
          DC Bar No. 472860
          Bruno & Degenhardt
          10615 Judicial Drive, Suite 703
          Fairfax, Virginia 22030
          Tel: (703) 352-8960
          Fax: (703) 352-8960
          E-Mail: c.bruno6@verizon.net

          /s/ Morton S. Taubman
          Morton S. Taubman, Esquire
          DC Bar No. 316604
          Leser Hunter Taubman & Taubman, PLLC
          1201 15th Street, NW, Second Floor
          Washington, DC 20005
          Tel: (202) 347-9090
          Fax: (202) 659-2679
          E-Mail: mtaubman@isiwdc.com

          Co- Counsel for Defendant Andrew Warren

**CERTIFICATE OF SERVICE**

 **I HEREBY CERTIFY** that on this 9TH day of October 2009, I electronically filed the foregoing document with the Clerk using CM/ECF.  I also certify that the foregoing is being served this day upon all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

               /s/ Mark David Hunter
               Mark David Hunter, Esquire