FILED WITH
COURT SECURITY OFFICER
4/9/2010
DATE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | No. 09-CR-158 (ESH) |
| ) | |
| ANDREW WARREN, ) | |
| ) | |
| Defendant.    ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Andrew Warren, a former employee of the United States Central Intelligence Agency ("the Agency"), was previously assigned to the United States Embassy in Algiers, Algeria. He has been charged with sexual abuse in the special maritime and territorial jurisdiction of the United States, 18 U.S.C. §§ 7(9), 2242(2), stemming from an alleged incident in February 2008. Victim 2,[1] an Algerian national and acquaintance of Warren, claims that while visiting defendant's residence in Algiers, he placed a chemical substance in her drink, causing her to become incapacitated, and had sexual intercourse with her without her consent.

Defendant has moved to depose three witnesses pursuant to Rule 15 of the Federal Rules of Criminal Procedure, which allows courts to grant such motions "because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). Defendant maintains that the witnesses he seeks to depose are unavailable for trial but will provide testimony that is material to his defense and necessary to prevent a failure of justice. Defendant has also

---

[1] Pursuant to the government's motion *in limine* to allow certain of its witnesses to testify using pseudonyms and in order to be consistent with identifiers used in earlier briefing, the Court refers to the alleged victim as Victim 2. Victim 1 is being called by the government under Fed. R. Evid. 404(b) to testify that defendant also chemically incapacitated her and had sexual intercourse with her without her consent.

REDACTED

requested letters rogatory, as the witnesses he seeks to depose are foreign nationals who are beyond the jurisdiction of this Court.

The Court held a hearing on defendant's motion on November 2, 2009. Based on arguments by counsel, the Court continued the hearing and requested specific proffers as to the substance and materiality of the requested testimony. The hearing resumed on February 19, 2010. At the conclusion of arguments, the Court took defendant's motion for Rule 15 depositions and letters rogatory under advisement. Having now reviewed the arguments, legal memoranda, and relevant law, the Court denies defendant's motion.

## FACTUAL BACKGROUND

On September 15, 2008, Victim 2 made a statement to an employee at the United States Embassy in Algeria, alleging that Warren had sexual intercourse with her without her consent on or about February 17, 2008. According to Victim 2, she had been acquainted with Warren for some time prior to the alleged incident, having met him at a United States Embassy function in Cairo, Egypt. Victim 2 claims that in February 2008, she went to Warren's home in Algiers at his invitation and consumed two drinks prepared by him, whereupon she became ill. As she passed in and out of consciousness and became unable to move, Victim 2 remembers Warren undressing her and, ultimately, having sexual intercourse with her. She awoke sometime later in his bed, but did not understand what had happened, and she does not remember dressing and returning to her home.

Victim 2 states that she told her husband and her psychologist of the events at Warren's residence on the day they occurred and that two days later, she sent a text message to Warren, accusing him of abusing her. However, Victim 2 did not inform anyone at the United States Embassy of the alleged incident until September 2008. Approximately ten days after Victim 2
2

spoke with an employee of the Embassy, an agent from the Diplomatic Security Service ("DSS") of the State Department took her statement.

Warren maintains that the sexual contact between himself and Victim 2 was consensual and was initiated by Victim 2. However, he states that afterward, Victim 2 expressed remorse over the encounter because of her marital status. He also claims that he and Victim 2 communicated via text messaging in the days following February 17, 2008, and that Victim 2 requested that Warren contact her so that they could resolve the situation. According to Warren, he was alarmed by the request and declined to meet with Victim 2.

Warren now seeks to depose three witnesses—Witness A, Witness B, and Witness C—who he argues can provide testimony that is material to his defense but who are unavailable to testify at trial. Warren contends that the witnesses have indicated to him that they are unwilling to testify at defendant's trial but would sit for a deposition if they are subpoenaed to do so. (Feb. 19, 2010 Hr'g Tr. Excerpt [2/19/10 Tr. Excerpt] at 9:12-16.)

Witness A is a [ ] foreign national [ ]

[ ]

[ ]

[ ]

[ ]

[ ] and that he and Warren discussed the possibility that Victim 2 was part of such an operation, known as a "honey trap," after she accused him of abusing her and requested a meeting with him to resolve the situation.

Witness B is also a [ ] foreign national [ ]

[ ] Warren contends that Witness B, like

Witness A, [redacted]

[redacted] Witness B would also testify that, sometime after February 17, 2008, Warren told him that he suspected that the Algerian government had attempted to use a female agent against him, [redacted].

Witness C is an Algerian national whom Warren dated for much of his time in Algiers. According to Warren, she would testify that she believed that Victim 2 was an agent of the Algerian government with the goal of compromising defendant in order to obtain information, money, or favors from him. Warren maintains that Witness C would testify that she personally knew Algerian women who acted as "honey traps" to manipulate American officials.

## ANALYSIS

### I. LEGAL STANDARD

Rule 15 permits depositions in a criminal case to preserve testimony, not to foster discovery, and only in exceptional situations. *United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994); *see also United States v. Mueller*, 74 F.3d 1152, 1156 (11th Cir. 1996) ("Depositions, particularly those taken in foreign countries, are generally disfavored in criminal cases."). A party seeking such a deposition "bears the burden of demonstrating that exceptional circumstances necessitate the preservation of testimony though a deposition." *Kelley*, 36 F.3d at 1124 (quotation omitted). In meeting this burden, the defendant must demonstrate: 1) the materiality of the testimony; and 2) the unavailability of the witness to testify at trial. *Id.* at

1125. The defendant must also make "some showing, beyond unsubstantiated speculation, that the evidence exculpates [him]." *Id.* (quotation omitted).

"Unavailability is defined by reference to Federal Rule of Evidence 804(a), which provides, in relevant part, that a witness is unavailable if he or she is 'absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means.'" *United States v. Straker*, 567 F. Supp. 2d 174, 180 (D.D.C. 2008) (quoting *United States v. Aguilar-Tamayo*, 300 F.3d 562, 565 (5th Cir. 2002)). A witness who resides abroad and outside the reach of a court's subpoena power is not automatically "unavailable" without a further showing that he or she will not testify in court. *Id.* Additionally, "the text and structure of Rule 15, as well as judicial opinions interpreting the rule, distinguish between the *availability* of a deposition and the eventual *admissibility* of the deposition testimony at trial." *United States v. Eyong*, No. 06-305, 2007 WL 1576309, at *1 (D.D.C. May 30, 2007). As such, "when the question is close a court may allow a deposition in order to preserve a witness' testimony" and leave until trial the question of admissibility. *Id.* (quoting *United States v. Mann*, 590 F.2d 361, 366 (1st Cir. 1978)). *But see United States v. Drogoul*, 1 F.3d 1546, 1555 (11th Cir. 1993) ("The court need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial.").

A defendant must also: 1) demonstrate that the testimony to be offered by those witnesses is material, and 2) make "some showing, beyond unsubstantiated speculation, that the evidence [the witness will provide] exculpates him." *Kelley*, 36 F.3d at 1125 (quotation omitted); *Eyong*, 2007 WL 1576309, at *1. Testimony that offers only "general observations," as opposed to direct or circumstantial evidence, is not considered material or exculpatory. *See Straker*, 567 F.

5

Supp. 2d at 181-82 ("general observations" about location of alleged meetings and "plausibility" of defendants working together to commit crime are not material).

## II. UNAVAILABILITY

The fact that the three witnesses defendant seeks to depose live abroad and outside of the reach of a subpoena does not necessarily render them "unavailable" to testify. *See Straker*, 567 F. Supp. 2d at 180. The burden is on defendant to procure their attendance by "reasonable means" and resort to relief under Rule 15 if his procurement attempts fail. *Id.* Here, defendant asserts that Witnesses A, B, and C have refused to testify at trial but are willing to be deposed if properly summoned.

Evidence that a witness specifically refuses to testify at trial is "potent proof of unavailability for purposes of Rule 15(a)," *Drogoul*, 1 F.3d at 1553, although it is unclear what efforts defendant has made to procure these witnesses' attendance at trial, beyond asking whether they would be willing to testify. For example, defendant does not state whether he offered to pay for their travel to the United States. *See, e.g., United States v. Ismaili*, 828 F.2d 153, 160 (3d Cir. 1987) ("[T]he unwillingness of a witness to travel to this country unless his expenses are paid does not necessarily mean that he is unavailable."). However, defendant represents that the unwillingness of Witnesses A and B to testify arises from their ▮▮▮▮▮ positions and the possibility of sanctions from their respective governments if they testify voluntarily.[2] And, defendant claims that Witness C has stated that she will not testify at trial because she fears

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ It is fair to assume that Witnesses A and B would also be instructed by their respective governments not to sit for depositions in this case, even were they to receive letters rogatory, and that the issuance of such letters would thus be futile.

for her safety due to the highly publicized and negative nature of this case in the Algerian press.[3] Arguably, these explanations suggest that Witnesses A, B, and C would remain unwilling to testify regardless of defendant's efforts, and as a result, the Court will proceed to the second prong of Rule 15's analysis.

### III. MATERIALITY AND EXCULPATORY NATURE

Based on the record before the Court, defendant has failed to meet his burden of showing that extraordinary circumstances warrant depositions in this case. Although evidence regarding the use of "honey traps" [ ] is arguably relevant to Warren's defense, the Court finds that general descriptions of such tactics, without any connection to defendant or any competent evidence as to who employed them and when, is not material to defendant's case or exculpatory. Simply put, evidence that female operatives have been used [ ] [ ] before does not tend to prove that one was used to target defendant. Moreover, defendant has provided no information as to the bases for the expected testimony of any of his proposed witnesses. There has been no indication that the witnesses' testimony [ ] [ ] is based on first-hand knowledge and not inadmissible hearsay. Likewise, Witness B's conjecture that [ ]
[ ]

---

[3] This position is highly suspect since Witness C's purported fear of reprisal is inconsistent with her apparent willingness to appear at a deposition pursuant to a letter rogatory, which would notify the Algerian government of her identity and the subject of her testimony. (2/19/10 Tr. Excerpt at 9:4-11.) However, the Court will credit defense counsel's representations that Witness C has refused to testify at defendant's trial and, as such, will proceed on the assumption that defendant has shown that Witness C is unavailable. *See Drogoul*, 1 F.3d at 1553.

7

[ ] is, without further evidence to support his theory, "unsubstantiated speculation." *Kelley*, 36 F.3d at 1125; *see also Straker*, 568 F. Supp. 2d at 181-82.

Testimony from Witnesses A and B regarding their conversations with Warren after the alleged assault of Victim 2 and Witness B's speculation that [ ] similarly fails to exculpate defendant. There is no suggestion that these witnesses know anything about defendant's interactions with Victim 2 other than what they learned from defendant, and this would likely be inadmissible at trial on the grounds of hearsay. The Court need not allow depositions in order to preserve testimony where the question of admissibility is not a close one and the evidence at issue is unsupported conjecture that does not exculpate defendant. *See United States v. Tolliver*, 61 F.3d 1189, 1206 (5th Cir. 1995) (district court was within its discretion when it determined that exceptional circumstances did not exist where testimony was of "questionable value to the defense case" and "there [was] no showing that, had the deposition been taken, it would have been admissible at trial"), *vacated on other grounds sub nom. Sterling v. United States*, 516 U.S. 1105 (1996); *Drougal*, 1 F.3d at 1555.

Witness C's testimony that she "believed" that Victim 2 was an agent of the Algerian government with the goal of compromising defendant directly implicates the parties and events at issue in this case. However, defendant offers no foundation or background information to support Witness C's alleged opinions. As such, her testimony, like that of Witness B, is unsupported conjecture and is insufficient to meet the requirements of Rule 15. *See Kelley*, 36 F.3d at 1125 (requiring showing "beyond unsubstantiated speculation" that evidence exculpates

---

[4] As made apparent by information provided by the government to the Court and defense counsel subsequent to the filing of defendant's Rule 15 motion (referred to by the Court as "Exhibit A"), there is a serious question as to whether Witness B has any firsthand knowledge of the [ ]

defendant). As such, defendant has failed to meet his burden of demonstrating extraordinary circumstances that warrant depositions of Witnesses A, B, and C in this case.

## CONCLUSION

For the foregoing reasons, defendant's motion for Rule 15 depositions and letters rogatory is **DENIED**.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: April 8, 2010